COWLES *v.* ERB-RESTRICK LUMBER COMPANY

1. AUTOMOBILES—NEGLIGENCE—NEGLIGENT OPERATION—OWNER LIA-BILITY—STATUTES.

   The owner of a motor vehicle is liable for any injury caused by the negligent operation of his vehicle when it is driven by another person with the owner's express or implied consent or knowledge (MCLA § 257.401).

2. PLEADING—COURT RULES—STATEMENTS OF FACT—ADMISSIONS—PROOF—NECESSITY.

   Any statement of fact in any pleading shall be treated as an admission by the pleader and need not be proved by the opposite party (GCR 1963, 606).

3. PLEADING—STATEMENTS OF FACT—PARTIES—ADMISSIONS—PROOF—NECESSITY—COURT RULES—AUTOMOBILES—NEGLIGENCE.

   Defendant company's admission in pleadings that one of its employees was operating the company-owned truck which collided with plaintiff's automobile obviated the necessity for plaintiffs to prove this fact (GCR 1963, 606).

4. MASTER AND SERVANT—AUTOMOBILES—NEGLIGENCE—MOTOR VE-HICLE OPERATOR—EMPLOYEE STATUS—ASCERTAINMENT—WITNESSES—EXAMINATION—PROPRIETY.

   Whether a certain named person was an employee of defendant company on the date that a company-owned truck collided with

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 595–614.
[2, 3] 41 Am Jur, Pleadings § 201.
[4] 8 Am Jur 2d, Automobiles and Highway Traffic § 961.
[5] 58 Am Jur, Witnesses § 25.
[6, 7] 58 Am Jur, Witnesses § 21 *et seq.*
[8, 9] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 912, 913.

plaintiffs' automobile was a proper question for plaintiffs' counsel to ask an officer of defendant company and the trial court committed prejudicial error by striking that question following a defense objection to it.

5. Subpoena Duces Tecum—Compliance—Enforcement.

Trial court had a duty to enforce compliance with a subpoena *duces tecum* ordering defendant company to produce employment records of a certain named person who, as a company employee, was allegedly operating defendant's truck when it collided with plaintiff's automobile, since defendant company could hardly claim it did not know that plaintiffs wanted that employee's records pertaining to the date of the collision.

6. Witnesses — Subpoena Duces Tecum — Compliance — Enforcement.

A party has a fundamental right to have compliance with a subpoena *duces tecum* and to have the trial court enforce that right, if necessary.

7. Trial—Parties—Courts—Subpoena Duces Tecum—Compliance —Enforcement—Waiver.

Compliance with, and enforcement of, a subpoena *duces tecum* is not waived because the subpoenaing party has rested his case, after the witness had indicated that his failure to comply was because the records were in storage.

8. Master and Servant—Negligence—Prima Facie Case—Proof— Tortfeasor's Employment Status.

A *prima facie* case of negligence liability under the *respondeat superior* doctrine is established when a plaintiff proves only that the tortfeasor was an employee of defendant at the time of plaintiff's injury, since the establishment of a *prima facie* case does not require a plaintiff at that time to prove that the tortfeasor was acting within the scope of his employment.

9. Master and Servant—Automobiles—Employee Driver—Implied Consent—Presumption.

An employee is presumed to be driving his employer's motor vehicle with the employer's implied consent unless there is evidence to the contrary.

Appeal from Oakland, James S. Thornburn, J. Submitted Division 2 December 5, 1969, at Detroit. (Docket No. 6,947.)    Decided February 6, 1970.

Complaint by Richard Cowles and Margaret Cowles against the Erb-Restrick Lumber Company, a Michigan corporation, for injuries sustained during an automobile collision. Judgment of no cause of action. Plaintiffs appeal. Reversed and remanded for a new trial.

*Harry F. Ward* (*Theodore M. Rosenberg,* of counsel), for plaintiffs.

*Reginald S. Johnson,* for defendant.

Before: R. B. Burns, P. J., and Holbrook and V. J. Brennan, JJ.

Holbrook, J. Margaret Cowles was involved in a three-vehicle accident at Woodward and Fourteen Mile road in Birmingham, Michigan, on August 6, 1965. Mrs. Cowles and her husband, Richard Cowles, as plaintiffs, brought this action under the civil liability statute MCLA § 257.401 (Stat Ann 1968 Rev § 9.2101).[1]

After presentation of the plaintiffs' case before the court without a jury, the court ruled that in the event of liability the damages should be $1,000 for Richard Cowles and $2,500 for Margaret Cowles. It further found that the plaintiffs had failed to prove their cases by a preponderance of the evidence and entered a judgment of no cause of action. The plaintiffs moved for a new trial which was denied and plaintiffs have appealed.

[1] "The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge."

The plaintiffs alleged in their complaint in part as follows:

3. That *on the 6th day of August, 1965 at approximately 11:45 a.m.,* the plaintiff Margaret Cowles was the driver of a 1963 Valiant bearing 1965 Michigan license plate number GH 9484, which was being driven in a southerly direction *on Woodward near the intersection of Fourteen Mile Road in the City of Birmingham,* County of Oakland, State of Michigan and had come to a stop in obeyance of a traffic control signal then and there present.

"4. That *on the aforementioned date, time and place, one, Elias Siadi, was the driver of a 1959 International tractor bearing 1965 Michigan license plate number 8740–CN,* which was being driven with the expressed and complied [*sic*] consent of the defendant owner herein, Erb-Restrick Lumber Company, in a southerly direction on Woodward near the intersection of Fourteen Mile Road in the City of Birmingham, County of Oakland, State of Michigan, in a careless, heedless and negligent manner and did thereby smash and crash into the rear of the stopped vehicle of the plaintiffs causing the severe injuries as hereinafter alleged.

"5. That *the defendant herein, Erb-Restrick Lumber Company, was under a duty to see that their vehicle was being driven with due care and caution* and to obey the statutes of the State of Michigan * * * ." (Emphasis supplied.)

Defendant in answering these allegations stated:

"3. Defendant admits dates, time and place but denies each and every other allegation of said paragraph as being untrue.

"4. Defendant admits Elias Siadi was driving the described vehicle but denies each and every other allegation of said paragraph as being untrue.

"5. Defendant denies that they in any way breached any of the duties that may have been owed

by defendant to the plaintiff under the circumstances that may have then and there existed  *  *  * ."

Defendant also in its answer pleaded an affirmative defense, which is stated in part as follows:

"*  *  *  Defendant will rely on the affirmative defenses of sudden emergency and failure to give a timely signal of intentions to stop and contributory negligence  *  *  * ."

The parties waived a pretrial hearing; however, in the defendant's pretrial statement appears the following:

"*Defendant's Claim:* Defendant denies any negligence and states that the failure was that of plaintiff in giving a timely signal of failure to stop under the circumstances.

"Defendant denies that plaintiff was injured to the extent now claimed, if at all."

It is apparent, from the pleadings, that defendant was informed that plaintiff claimed *it was a 1959 International tractor bearing 1965 license plate No. 8740–CN driven by Elias Siadi* that was involved in the accident. The defendant admitted that Elias Siadi was driving this vehicle.

The defendant in its affirmative defense stated certain facts as follows:

"1. That the weather and traffic was such to require an extra degree of caution *which defendant driver did on information and belief use.*

"2. That the negligence of plaintiff was such as to preclude the assured clear distance *for defendant driver and caused the accident herein.*" (Emphasis supplied.)

GCR 1963, 606 provides:

"Any statement of fact set forth in any pleading shall be treated as an admission by the pleader and need not be proved by the opposite party."

Under this rule, we conclude that defendant's assertion that *"defendant driver"* was driving at the time of the accident did not need to be proven by plaintiffs even though this fact is contained in an affirmative defense allegation. This conclusion may at first appear to be going too far; however, it is consistent with the affirmative defense asserted and to hold otherwise would be inconsistent with the pleading of defendant's claims.

Exhibits 4 and 5, registration and title for the described truck obtained from the Secretary of State's office by plaintiffs were properly admitted and satisfied the trial judge that the defendant owned the vehicle bearing license plates for 1965 No. 8740–CN.

Margaret Cowles, plaintiff, testified in part:

*"Q.* In what direction were you travelling?

*"A.* Toward Detroit, which would be south.

*"Q.* As you approached the intersection of 14 Mile Road what did you do?

*"A.* I stopped.

*"Q.* Why did you stop?

*"A.* There was a red traffic signal, and traffic in front of me that also stopped.

*"Q.* Did you come to a complete stop?

*"A.* Yes.

*"Q.* What happened then?

*"A.* We were stopped in the car for a few moments. Then all of a sudden there was a terrific jolt and noise accompanying it.

*"Q.* What happened to your vehicle?

*"A.* The car seemed to be propelled forward. Then we felt another jolt, a second jolt.

*"Q.* Did you strike the car in front of you?

*"A.* Yes.

* * *

*"Q.* Did you observe the vehicle that had come up behind you and struck you?

*"A.* Yes.

"*Q*. What kind of a vehicle was that?

"*A*. It was a truck loaded with lumber.

"*Q*. A tractor-trailer or single truck, do you know?

"*A*. Descriptively I couldn't tell you. It was a truck that you could see the lumber. It was open.

"*Q*. Did you have a conversation with the driver of that vehicle? Did you say anything to him or did he say anything to you?

"*A*. Yes."

Donald Graham, the investigating officer, testified in part as follows:

"*Q*. And do you know, Officer Graham, at this time how soon you arrived at the scene of the accident after it happened?

"*A*. I would say within two or three minutes.

"*Q*. While you did not take a written statement from the people involved, you did question the people orally at that time?

"*A*. I did.

"*Q*. Were they in one another's presence?

"*A*. They were, yes.

"*Q*. What did they say to each other and what did they say to you, if you recall?

"*A*. Well, the first two vehicles, being passenger cars, had approached the traffic light and were slowing and had stopped for a red traffic signal. The driver of the lumber truck stated that he had noticed the light changing, had looked away, and when he looked back he did not have time to stop to avoid a collision with the vehicles in front of him, and he struck the rear end.

\* \* \*

"*Q*. At the scene of the accident you found three vehicles, is that correct, Officer Graham?

"*A*. Yes, sir.

"*Q*. Were they touching one another? Were they in physical contact with one another?

"*A*. They were.

"*Q.* The first car in line, was that into the intersection at all? Can you describe where that was?

"*A.* Just originally it had been at the stop bar. From the collision it had been moved partially into 14 Mile Road.

"*Q.* Did you indicate how far the vehicle was into 14 Mile Road?

"*A.* Oh, I would say approximately—the stop bar is probably 10 feet back. He was approximately moved 20 feet forward, maybe 10 feet into 14 Mile Road.

"*Q.* Was the vehicle behind that still in physical contact with the car that had been pushed forward?

"*A.* I don't recall.

"*Q.* I know it is a long time ago. It is hard to recall.

"*A.* I don't recall if it was.

"*Q.* If you recall, was the Erb-Restrick Lumber Company truck in contact with the middle vehicle?

"*A.* The Restrick Lumber truck and the second vehicle were in contact. The third one I believe was pushed a little forward. It was not in contact, but I could be in error.

"*Q.* There is a traffic control signal at that intersection?

"*A.* Yes, sir."

The plaintiffs subpoenaed Mr. Leonard Nasiatka, an officer of defendant company, to bring with him "[a]ll records pertaining to ownership, title and registration of a 1959 International tractor bearing 1965 Michigan license plates No. 8740–CN in August 6, 1965, and employee records of Elias Siadi."

Mr. Nasiatka testified in part as follows:

"*Q.* Where are you employed?

"*A.* Erb-Restrick Lumber Company.

"*Q.* Did you in response to subpoena bring in all the records you had on hand pertaining to a particular 1959 International tractor truck?

"*A.* Yes, I did.

"*Q.* And also the employment record of one Elias Siadi?

"*A.* I did.

"*Q.* Any material pertaining to this particular truck that you did not bring with you?

"*A.* We no longer have the title to that truck. We sold it I think two or three weeks ago.

"*Q.* Do you know of your own personal knowledge whether or not Elias Siadi was in your employment August 6, 1965?

"*Mr. Johnson:* Objection, your Honor.

\*      \*      \*

"*The Court:* Objection sustained. The question is stricken.

\*      \*      \*

"*Q.* Did you bring all the employment records of Mr. Siadi with you, sir?

"*A.* Everything except his past earnings cards.

"*Q.* Are these earnings cards?

"*A.* For 1967 and 1968.

"*Q.* Do you have them for past years?

"*A.* They would be in storage.

"*Q.* Oh, they are in storage?

"*A.* Yes.

"*Q.* That is why you didn't bring them?

"*A.* Right.

"*Mr. Ward:* Well, your Honor, he didn't respond to my subpoena, bringing all the things. But at this time I am going to rest, your Honor. I will not argue this point any more. If I am out of court, whatever his Honor decides, then I will appeal this on this particular issue. \*   \*   \*  "

We rule that the question as to whether Elias Siadi was an employee of the defendant on the date in question was proper and that the sustaining of the objection and striking of the question was prejudicial error. We further rule that the court under these circumstances had a duty to see to it that the defendant complied with the subpoena and produced the

employee records of Elias Siadi, the driver of the vehicle that was in the accident. Defendant could hardly claim that it did not know that plaintiff wanted the records pertaining to the date of the accident. We determine that counsel for plaintiffs in resting their case did not waive their fundamental right to have the defendant comply with the subpoena and to have that right enforced, if necessary, by the court. We realize the courts of our state are busy, but, certainly not too busy to require a litigant to produce that which it has and was ordered to bring to court.

The plaintiffs did not have to prove that the defendant's driver was acting within the scope of his employment at the time of the accident, but only that he was an employee of defendant at the time so as to make out a *prima facie* case. An employee is presumed to be driving with the implied consent of his employer in the absence of testimony to the contrary. There was no testimony to the contrary in this case. *Citizens' Mutual Automobile Insurance Company* v. *Houtz* (1960), 361 Mich 309.

Counsel for plaintiffs had considerable difficulty in presenting their proofs. This might have been alleviated had he qualified the pertinent information appearing on the officer's report. The officer was not questioned sufficiently to admit the information under *Germiquet* v. *Hubbard* (1950), 327 Mich 225.

Reversed and remanded for a new trial.

Costs to plaintiffs.

All concurred.